| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FELIPE ZACARIAS-MERCADO,<br><br>Defendant. | No. 1:20-cr-00033-DAD-BAM<br><br>ORDER DENYING DEFENDANT'S EMERGENCY MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. No. 19) |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Pending before the court is defendant Felipe Zacarias-Mercado's motion for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 19.) That motion is based in part on the purported risks posed to defendant Zacarias-Mercado by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On February 13, 2020, defendant Zacarias-Mercado was charged by way of indictment in one count with being a deported alien found in the United States in violation of 8 U.S.C. § 1326(a) and (b)(2). (Doc. No. 1.) On June 8, 2020, defendant Zacarias-Mercado entered a plea of guilty to that charge, waived his right to full pre-sentence report, agreeing instead to be sentenced based upon a pre-plea report on the same day as his change of plea, and was immediately sentenced, as contemplated by the parties' plea agreement, to a term of 46 months

imprisonment in the custody of the U.S. Bureau of Prisons ("BOP"). (Doc. Nos. 15, 16.) Defendant Zacarias-Mercado is currently incarcerated at the Fresno County Jail ("FCJ"), awaiting transfer to a BOP facility. (Doc. No. 24 at 2.)

On October 16, 2020, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 19.) On November 2, 2020, the government filed its opposition to the motion, and on November 9, 2020, defendant filed his reply thereto. (Doc. Nos. 24, 25.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that —

    (i)    extraordinary and compelling reasons warrant such a reduction; or

    (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and

---

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, 2:98-cr-00749-CAS, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a

---

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

4

>district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

### A. Administrative Exhaustion

Defendant asserts, and the government does not dispute, that defendant exhausted his administrative remedies prior to filing his pending § 3582 motion. (Doc. Nos. 19 at 4; 24 at 3.) Because failure to exhaust is normally viewed as an affirmative defense, the court will accept the government's concession and turn to the merits of defendant's motion.

### B. Extraordinary and Compelling Reasons

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate

5

release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)  suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 2020 WL 2572525, at *9–10 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because

/////

/////

of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[4]

Defendant Zacarias-Mercado argues that "[b]ased on [his] health issues and prior contraction of COVID-19 at the Fresno County Jail, [he] is amongst those at risk for reinfection." (Doc. No. 19 at 4.) Defendant tested positive for COVID-19 back on June 24, 2020, suffered relatively minor symptoms, and has very fortunately since recovered to a significant degree. (*Id*. at 9.) Nonetheless, defendant explains that he experienced anxiety and difficulty breathing prior to contracting COVID-19 and that, while suffering from the virus, he experienced headaches, bone pain, and loss of taste. (*Id*.) Defendant also contends he continues to suffer from bloody noses, headaches, difficulty breathing, numb toes, and lack of taste. (Doc. No. 19-1 at 5.) In support of his pending motion, defendant recites in summary fashion the current danger and spread of COVID-19 throughout the United States, specifically emphasizing the growing rate of cases in the California Central Valley. (Doc. No. 19 at 7–8.) In addition to describing the general difficulties of preventing the spread of COVID-19 in prisons and jails, defendant Zacarias–Mercado lists the number of reported virus cases in the Fresno County Jail and quotes Fresno Sherriff Margaret Mims' statement that "[s]ome jails have the ability to isolate inmates and quarantine them before they're put into the general population. We don't have that ability." (*Id*.)

In opposition to the pending motion, the government asserts that "Mercado has failed to show that he has any of the pre-existing medical conditions that the Center for Disease Control has identified as putting someone at high-risk for severe COVID-19 complications." (Doc. No. 24 at 6.) The government concedes that defendant Zacarias–Mercado has already tested positive for, and recovered from, COVID-19 with no serious complications. (*Id.* at 7.) However, the government argues that "Mercado's assertion that his medical conditions may contribute to serious complications from COVID-19 if he is re-infected is belied by the fact that he did not experience any such complications the first time around." (*Id.*) The government disputes whether the defendant suffers from anxiety and difficulty breathing, which it contends are not

---

[4] Here, however, because defendant Zacarias-Mercado is only 43 years old (Doc No. 23 – sealed), his age and age-related factors do not play a role in consideration of his pending motion.

7

recognized as high risk factors in connection with the virus. (*Id*. at 6–7.) The government also argues that the general threat of COVID-19 does not satisfy the extraordinary and compelling reasons test necessary for the granting of compassionate release. (*Id*. at 6.) Accordingly, the government contends that defendant Zacarias-Mercado "has failed to meet his burden to show that an extraordinary and compelling reason exists to reduce his federal prison sentence by over 80 percent." (*Id*. at 8.)

In his reply, defendant argues that courts "have nevertheless granted release to people without any underlying conditions." (Doc. No. 25 at 2.) Defendant also asserts that courts have "granted releases where a small percentage of the sentence had been served." (*Id*. at 3.) Defendant reiterates that he is not a danger to the community, has a newfound fear of incarceration that "[imprints] on him the need to be law-abiding," and understands that further criminal acts will prevent him from seeing his daughter. (*Id*. at 4–5.)

As an initial matter, the undersigned does not discount the possibility of reinfection from the virus. Courts have recognized that "the science is unclear on whether reinfection [of COVID-19] is possible." *States v. Yellin*, No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *13 (S.D. Cal. June 26, 2020); *see also United States v. Hanson*, No. 6:13-cr-00378-AA-1, 2020 WL 3605845, at *4 (D. Or. July 2, 2020) ("[T]here is no current scientific evidence to indicate that a 'recovered' COVID-19 patient is immune from reinfection, as several courts have recently acknowledged.") Other courts have taken the position that the uncertainty surrounding the danger of re-infection with COVID-19 "cuts against compassionate release," in part because it is the defendant's burden to establish that "extraordinary and compelling" reasons for compassionate release exist. *See United States v. Molley*, No. 15-cr-0254-JCC, 2020 WL 3498482, at *3 (W.D. Wash. June 29, 2020); *see also United States v. Zahn*, No. 4:18-cr-00150-JD, 2020 WL 3035795, at 2* (N.D. Cal. June 6, 2020) (regarding inmate who had recovered from COVID-19: while there is no certainty about the risk of reinfection, "the immediate threat to Zahn has passed, fortunately with no serious complications of any kind. That is enough to find that he has not proffered an extraordinary and compelling reason for release under 18 U.S.C. § 3582(c)(1)(A)(i).") Erring on the side of caution, the undersigned finds defendant's fear of

reinfection, and the potential consequences to him were that to occur, to be potentially well-placed. Nevertheless, as explained below, the court does not find compelling or extraordinary reasons warranting a reduction in defendant's sentence at this time.

It is undisputed that the CDC does not recognize individuals with anxiety or general difficulty breathing as having an increased risk of suffering severe illness from COVID-19. *See People Who Are at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited November 5, 2020). However, even if individuals with anxiety or some difficulty breathing are at a higher risk of suffering severe illness from COVID-19, defendant Zacarias–Mercado has not shown, or even argued, that the FCJ is unable to monitor his condition and provide adequate medical care for him. In fact, the medical records defendant has submitted to the court in support of the pending motion suggest that the FCJ is providing him that monitoring and medical care. (Doc. No. 23 – sealed.) Since entering FCJ, defendant has received regular treatment and attention from clinical physicians. (*Id.*) Moreover, after testing positive for COVID-19 in June and, fortunately, recovering, defendant has continued to receive medical treatment. (*Id*. 5–9.) Based on the foregoing, the court finds that the evidence establishes that medical staff at the FCJ are able to adequately monitor and care for defendant Zacarias–Mercado. *See United States v. McCollough*, No. 15-cr-00336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) ("Since Defendant has contracted COVID-19, the relevant questions concern (1) the course of his illness, (2) the state of his health, (3) his prognosis, and (4) the adequacy of the care and treatment being provided to him in BOP given his pre-existing conditions. . . . There is no evidence that the circumstances surrounding Defendant's health or treatment are extraordinary or compelling."); *see also United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (internal quotation marks and citation omitted).

As one court has acknowledged, "the presence of COVID 19 . . . necessitates a more expansive interpretation of what self-care means" and thus the inability of individuals at high risk

9

of becoming severely ill from COVID-19 to practice appropriate hygiene, wear a mask and maintain social distancing may constitute an inability to provide self–care under some circumstances. *United States v. Gorai*, No. 2:18-cr-00220-JCM, 2020 WL 1975372, at *3 (D. Nev. April 24, 2020)) (citation omitted). However, here, defendant Zacarias–Mercado has not persuasively argued that he is unable to provide self-care at the FCJ—whether that means self-care considering his anxiety and some difficulty breathing or his ability to maintain social distancing and avoid contracting COVID-19. In the pending motion, defendant merely asserts in conclusory fashion that the FCJ has suffered an outbreak of COVID-19, the outbreak is not controlled, inmates share crowded communal places, and the FCJ does not follow proper sterilization procedures. (Doc. No. 19 at 9.)

The court certainly recognizes that the Fresno County Jail has at times failed to control the outbreak of COVID-19 at that institution. According to a news report, the Fresno County Sheriff's Department "announced on [July 21, 2020] that 471 inmates have tested positive for the coronavirus" at that jail. *See New details released on COVID-19 outbreak at Fresno County Jail*, https://abc30.com/fresno-county-coronavirus-jail-covid-outbreak-cases-covid-19/6328997/ (last reviewed November 10, 2020). The undersigned is receiving regular situation reports from the U.S. Marshal regarding the COVID-19 situation at the Fresno County Jail, where over 200 of this court's detainees are in custody along with over 2,000 county inmates. However, according to the report received by the undersigned on November 12, 2020, the number of active cases among federal prisoners at the FCJ is now zero, with 39 federal inmates being held in precautionary quarantine and just 3 active cases of the virus among county prisoners or detainees. The situation with the COVID 19 virus at the Fresno County Jail obviously remains an extremely serious one, particularly in light of the rising numbers of COVID 19 cases in the community in general. However, based on the present record before the court, there is no reason to believe that staff at the FCJ are unable to monitor and care for defendant Zacarias–Mercado.

Accordingly, the court concludes that defendant has not met his burden of demonstrating extraordinary and compelling reasons for this compassionate release under § 3582(c)(1)(A). Therefore, his motion will be denied.

### C.     Consistency With the § 3553(a) Factors

Finally, even if defendant Zacarias–Mercado's motion were supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[5] *See Parker*, 2020 WL 2572525, at *11.

In the pending motion, defendant argues that "[t]he § 3553(a) factors can be met in this case by an order of home confinement as a condition of supervised release." (Doc. No. 19 at 13.) Defendant further argues that he "is presently in custody for a non-violent offense . . . [and that] he will be removed from his family here in California, including his young daughter, which alone is a punishment." (*Id*.) Defendant contends his contraction of COVID-19 has served as a deterrent to violating the law; his release would lead to his deportation and thus prevent him from committing further crimes in California; and that he can stay with his father in Mexico. (*Id*. at 14.) Defendant also cites case law for the proposition that his immigration status should not prohibit this court from considering his compassionate release. (*Id*. at 10.)[6]

The government counters that "Mercado has an extensive criminal history dating back almost twenty years that includes multiple convictions for driving under the influence, drug trafficking, and firearms violations." (Doc. No. 24 at 8–9.) Specifically, the government points to defendant's convictions in state court in February 2020 for manufacturing a controlled

---

[5] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

[6] The court does not find defendant Zacarias–Mercado's immigration status to be relevant in resolving the pending motion.

substance, child abuse, and being a felon-in-possession of a firearm. (*Id*.)  The government also notes that defendant Zacarias–Mercado received only a 46-month sentence of imprisonment in this case, of which he has served only nine months or approximately 19.5 percent, even though the U.S. Probation Office's pre-plea report recommended a 78-month prison sentence. (*Id*. at 2.)

As noted above, defendant is currently serving a 46-month sentence for being a deported alien found in the United States in violation of 8 U.S.C. § 1326(a) and (b)(2). (Doc. No. 16.)  At the time of his sentencing on June 8, 2020, Zacarias-Mercado had accepted a Fast Track plea offer. (Doc. No. 24 at 2.)  With his acceptance of responsibility acknowledged, the presentence report in his case determined that his total offense level was 19, that his criminal history category was VI, and that his advisory sentencing guideline range therefore called for a term of imprisonment of between 63 and 78 months, absent consideration of the anticipated government motion for downward departure under U.S.S.G. § 5K3.1. (Doc. No. 14 at 3, 19.)  The probation officer did not identify any factors that would warrant a departure from the applicable sentencing guideline range. (*Id*. at 14–15.)  Pursuant to the Fast Track disposition reached by the parties, the United States moved for a downward departure under § 5K3.1 and recommended a low-end of the resulting guidelines sentence of only 46-months imprisonment. (Doc. No. 15.)  The court followed the parties' plea agreement and sentenced defendant accordingly. (Doc. No. 16.)

The court notes that in February 2020, defendant Zacarias-Mercado was convicted of state crimes, including using an alias while operating an illegal concentrated cannabis lab and possession of a loaded .45 caliber handgun that did not have a trigger lock and had the serial number obliterated. (Doc. No. 24 at 9.)  He committed these offenses "with nine children in the house." (*Id*.)  The government asserts that defendant continues to pose a danger to the community because his escalating convictions show that "Mercado is becoming more and more dangerous and . . . '[n]othing about the COVID-19 pandemic reduces the danger of drugs.'" (*Id.*) (quoting *United States v. Sandoval*, No. CR14-5105 RBL, 2020 WL 3077152, at *6 (W.D. Wash. June 10, 2020)).  The government argues that defendant's prior criminal history demonstrates a continued willingness to engage in crime. (Doc. No. 24 at 9.)  This court concludes that in light

/////

of defendant Zacarias-Mercado's background and history of criminal convictions, consideration of the risk of recidivism weighs against the granting of compassionate release in this case.

In addition, the court is not persuaded that defendant has established his post-offense rehabilitation since his sentencing just a few months ago. Neither defendant's motion nor his reply in support of that motion describe any rehabilitation efforts that he has undertaken while in custody. (Doc. Nos. 19, 25.) In fact, defendant Mercado presents no argument or evidence to support his claimed rehabilitation. *Cf. Parker*, 2020 WL 2572525, at *11 (granting a defendant compassionate release in part because he demonstrated rehabilitation during his imprisonment by earning two associate degrees, participating in other continuing education courses and working as an education instructor, "suicide companion," and career services clerk) (collecting cases). Even if defendant Mercado had demonstrated his full rehabilitation since sentencing, rehabilitation alone is not enough to warrant compassionate release. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3.

Finally, as of the date of this order, defendant Mercado has served only approximately nine months of his 46-month sentence. Granting his compassionate release motion would reduce his sentence to a nine-month term of imprisonment, which would be far below the advisory sentencing guidelines range in his case. In the court's view, a nine-month sentence would not adequately reflect the seriousness of defendant's offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See* 18 U.S.C. § 3553(a); *see also United States v. Purry,* No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *United States v. Shayota,* No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *5–6 (N.D. Cal. May 26, 2020) ("The length of the sentence remaining is an additional factor to consider in any compassionate release analysis, with a longer remaining

/////
/////
/////
/////
/////

sentence weighing against granting any such motion.") (citation omitted).[7] Defendant claims that this court did not take the COVID-19 pandemic into consideration during his initial sentencing. (Doc. No. 25 at 4.) However, this court sentenced defendant on June 8, 2020, just five months ago and well into the current pandemic and the court did consider those circumstances in imposing the sentence, which was in keeping with the parties' plea agreement.

## CONCLUSION

Because defendant Mercado has failed to demonstrate that "extraordinary and compelling" reasons exist justifying his release under 18 U.S.C. § 3582(c)(1)(A) or that his release from imprisonment at this time would be consistent with consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 19) is denied.

IT IS SO ORDERED.

Dated: **November 16, 2020**

UNITED STATES DISTRICT JUDGE

---

[7] In the pending motion, defendant also appears to ask the court to release him on home confinement. (*See* Doc. No. 19 at 4; *see also* Doc. No. 25 at 2.) However, the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)." *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice,* Case No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" because the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement"). The district court may, however, impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment. *See United States v. Connell*, No. 18-cr-00281-RS, 2020 WL 2315858, at *5, n.6 & *7 (N.D. Cal. May 8, 2020). The question is, should the court reduce the 46–month prison sentence that was just imposed in June of this year essentially to one calling for a mere nine months of imprisonment? The court has determined that such a reduction in sentence is not called for here.