UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:20-cr-00033-DAD-BAM |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT'S SECOND MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A) |
| FELIPE ZACARIAS-MERCADO, | |
| Defendant. | (Doc. No. 27) |

Pending before the court is defendant Felipe Zacarias-Mercado's second motion for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 27.) The court previously denied defendant Zacarias-Mercado's first motion for compassionate release on November 16, 2020. (Doc. No. 26.) The pending motion, filed on October 18, 2021, is based in part on the purported risks posed to defendant Zacarias-Mercado by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On February 13, 2020, defendant Zacarias-Mercado was charged by way of indictment with one count of being a deported alien found in the United States in violation of 8 U.S.C. § 1326(a) and (b)(2). (Doc. No. 1.) On June 8, 2020, defendant Zacarias-Mercado entered a plea of guilty to that charge, and agreed to be sentenced based upon a pre-plea presentence report on

1

1   the same day as his change of plea and was immediately sentenced, as contemplated by the

2   parties' plea agreement, to a term of 46 months imprisonment in the custody of the U.S. Bureau

3   of Prisons ("BOP").  (Doc. Nos. 15, 16.)  Defendant Zacarias-Mercado is currently incarcerated at

4   Federal Correctional Institution Mendota ("FCI Mendota") in Mendota, California.

5        As noted above, on October 16, 2020, appointed counsel filed a motion for compassionate

6   release on defendant's behalf pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 19.)  On

7   November 16, 2020, the court denied that motion on the merits, concluding that defendant

8   Zacarias-Mercado had failed to demonstrate that "extraordinary and compelling" reasons exist

9   justifying his release under 18 U.S.C. § 3582(c)(1)(A) or that his release from imprisonment

10  would be consistent with consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).

11  (Doc. No. 26.)

12       Thereafter, on October 18, 2021, defendant filed a *pro se* second motion for

13  compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and therein once again seeks a

14  reduction of his sentence.  (Doc. No. 27.)  On November 16, 2021, the government filed its

15  opposition to the pending motion.  (Doc. No. 30.)  Defendant did not file a reply.  However, on

16  January 26, 2022, defendant proceeding *pro se* filed a motion seeking an expedited resolution of

17  his second motion for compassionate release, arguing again that the ongoing coronavirus

18  ("COVID-19") pandemic posed a threat to his well-being and justified his release from

19  confinement.  (Doc. No. 36.)

20                                **LEGAL STANDARD**

21       A court generally "may not modify a term of imprisonment once it has been imposed."

22  18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment

23  of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may

24  not be modified by a district court except in limited circumstances.").  Those limited

25  circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*,

26  452 F. Supp. 3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018

27  ("the FSA"), motions for compassionate release could only be filed by the BOP.  18 U.S.C.

28  § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their

Case 1:20-cr-00033-DAD-BAM   Document 37   Filed 02/07/22   Page 3 of 12

own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).

In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –

> (i)    extraordinary and compelling reasons warrant such a reduction; or

> (ii)   the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a).  If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2]  Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention.  The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020).  However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2).  After the CARES Act was

3

1    The applicable policy statement with respect to compassionate release in the U.S.

2   Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and

3   compelling reasons."  U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g

4   Comm'n 2018)[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash.

5   2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and

6   compelling reasons," even though that policy statement was issued before Congress passed the

7   FSA and authorized defendants to file compassionate release motions).  However, the Ninth

8   Circuit has now held "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy

9   statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant."  *United States v.*

10  *Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).  "In other words, the Sentencing Commission has not

11  yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant."  *Id.*

12  The Ninth Circuit has concluded that "[t]he Sentencing Commission's statements in U.S.S.G. §

13  1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant,

14  but they are not binding."  *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir.

15  2020)).

16  /////

17  _____

18  enacted, the Attorney General issued a memo instructing the BOP to "immediately review all
    inmates who have COVID-19 risk factors" beginning with those who are housed at facilities

19  where "COVID-19 is materially affecting operations."  Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020).  The BOP has

20  acted on the Attorney General's guidance, including one case in which a sentenced prisoner was
    released to home confinement after serving less than half his sentence from a facility that reported

21  no positive COVID-19 cases at the time of his release.  *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.

22  com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the
    prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release

23  prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-

24  manafort-released-from-prison-amid-covid-19-fears.

25  [3]  According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C.

26  § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the
    community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).  However, as the Ninth

27  Circuit has now clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C.
    § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G.

28  § 1B1.13(2)."  *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).

1    In so holding, the Ninth Circuit joined the five other circuits who have addressed this

2    issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A)

3    motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a

4    defendant." *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020)

5    ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and

6    compelling reasons that an imprisoned person might bring before them in motions for

7    compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated

8    version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980

9    F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for

10   compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have

11   full discretion to define 'extraordinary and compelling' without consulting the policy statement

12   § 1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy

13   statement covering prisoner-initiated applications for compassionate release.  District judges must

14   operate under the statutory criteria—'extraordinary and compelling reasons'—subject to

15   deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ( "In

16   short, we agree with the Second Circuit and the emerging consensus in the district courts:  There

17   is as of now no 'applicable' policy statement governing compassionate-release motions filed by

18   defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are

19   'empowered . . . to consider any extraordinary and compelling reason for release that a defendant

20   might raise.'") (citation omitted); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021)

21   ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test,

22   its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case

23   was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G.

24   § 1B1.13.").

25       In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the

26   defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See*

27   *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit

28   has not specifically addressed the question of which party bears the burden in the context of a

5

1    motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district

2    courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States*

3    *v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United*

4    *States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

5                                          **ANALYSIS**

6          As district courts have summarized, in analyzing whether a defendant is entitled to

7    compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a

8    defendant has satisfied three requirements:

9                    First, as a threshold matter, the statute requires defendants to exhaust
                     administrative remedies.   18 U.S.C. § 3582(c)(1)(A).   Second, a
10                   district court may grant compassionate release only if "extraordinary
                     and compelling reasons warrant such a reduction" and "that such
11                   reduction is consistent with applicable policy statements issued by
                     the Sentencing Commission. *Id*.  Third, the district court must also
12                   consider "the factors set forth in Section 3553(a) to the extent that
                     they are applicable." *Id*.
13

14   *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v.*

15   *Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020);

16   *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No.

17   16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third

18   factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors

19   set forth in § 3553(a)).

20   **A.      Administrative Exhaustion**

21         Defendant asserts, and the government does not dispute, that he has exhausted his

22   administrative remedies prior to filing his pending § 3582 motion.  (Doc. Nos. 27 at 2; 30 at 3.)

23   Because failure to exhaust is normally viewed as an affirmative defense, the court will accept the

24   government's concession and turn to address the merits of defendant's motion.

25   **B.      Extraordinary and Compelling Reasons**

26         According to the Sentencing Commission's policy statement, "extraordinary and

27   compelling reasons" warranting compassionate release may exist based on a defendant's medical

28   conditions, age and other related factors, family circumstances, or "other reasons."  U.S.S.G.

                                              6

1   § 1B1.13, cmt. n.1 (A)–(D).  As addressed above, even though the catch-all of "other reasons"

2   was included in the policy statement at a time when only the BOP could bring a compassionate

3   release motion, courts have agreed that it may be relied upon by defendants bringing their own

4   motions for reductions in their sentence under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No.

5   2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases.)

6   Moreover, in light of the Ninth Circuit's decision in *Aruda*, while U.S.S.G. § 1B1.13 may inform

7   its determination, this court is not restricted thereby and instead has "full discretion to define

8   'extraordinary and compelling' without consulting the policy statement § 1B1.13."  *Jones*, 980

9   F.3d at 1111.

10          The medical condition of a defendant may warrant the granting of compassionate release

11   by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced

12   illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a

13   probability of death within a specific time period) is not required."  U.S.S.G. § 1B1.13, cmt.

14   n.1(A)(i).  Non-exhaustive examples of terminal illnesses that may warrant a compassionate

15   release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage

16   organ disease, and advanced dementia."  *Id*.  In addition to terminal illnesses, a defendant's

17   debilitating physical or mental condition may warrant compassionate release, including when:

18          The defendant is

19          (I)   suffering from a serious physical or medical condition,

20          (II)  suffering from a serious functional or cognitive impairment, or

21          (III) experiencing deteriorating physical or mental health because of
22          the aging process, that substantially diminishes the ability of the
             defendant to provide self-care within the environment of a
23          correctional facility and from which he or she is not expected to
             recover.

24   *Id*. at cmt. n.1(A)(ii).  Where a defendant has moderate medical issues that otherwise might not be

25   sufficient to warrant compassionate release under ordinary circumstances, many courts have

26   concluded that the risks posed by COVID-19 may tip the scale in favor of release when the

27   particular circumstances of a case are considered in their totality.  *See, e.g.*, *Parker*, 461 F. Supp.

28   3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates

1   suffering from conditions such as hypertension and diabetes are now at an even greater risk of

2   deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify

3   compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405

4   (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr.

5   Rodriguez's health problems, proximity to his release date, and rehabilitation would not present

6   extraordinary and compelling reasons to reduce his sentence.  But taken together, they warrant

7   reducing his sentence.").

8         Compassionate release may also be warranted based on a defendant's age and other

9   related factors.  Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at

10  least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because

11  of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of

12  imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).[4]

13        As in his first motion for compassionate release which the court denied, defendant

14  Zacarias-Mercado again asserts that based on his health issues and his prior contraction of the

15  COVID-19 virus at the Fresno County Jail while his case was pending before this court, he is

16  particularly at risk of suffering severe illness from the COVID-19 virus at this time.  (Doc. No. 27

17  at 1.)  Defendant previously tested positive for COVID-19 on June 24, 2020.  (*Id.*)  Defendant

18  contends that as a result of his prior infection, his health is rapidly deteriorating and that he is

19  suffering from diabetes, asthma, breathing problems, high cholesterol, hypertension, severe

20  muscle weakness, and body pain.  (*Id.*)  Defendant concludes that his current conditions place

21  him at a high risk of suffering a severe illness were he to contract COVID-19 again.  (*Id.*)  In

22  further support of his pending motion, defendant recites in summary fashion the current danger

23  posed by and the spread of the COVID-19 virus throughout correctional facilities generally.  (*Id.*)

24  With specific respect to FCI Mendota, defendant argues that the prison is understaffed with

25  respect to medical services.  (*Id.* at 2.)

26  /////

27  ―――――――――――――

28  [4]  Here, however, because defendant Zacarias-Mercado is only 45 years old (Doc No. 23 at 2—
    sealed), his age and age-related factors do not play a role in consideration of his pending motion.

8

1        In its opposition to the pending motion, the government asserts that defendant's medical

2 records reflect only "that he has general asthma, that is not moderate or severe, and diabetes, and

3 that he is being successfully treated for these health problems through an inhaler and

4 medications." (Doc. No. 30 at 5.) Moreover, the government points out that defendant's medical

5 records show that he has now been fully vaccinated against the COVID-19 virus. (*Id.*) (citing

6 Doc. No. 35 at 52 — sealed). The government concedes that defendant Zacarias-Mercado has

7 tested positive for, and recovered from, COVID-19, but argues that his previous infection,

8 adequate treatment, and vaccination status all contribute to diminish any future risk of severe

9 illness posed by the virus to defendant. (*Id.* at 6.)

10        As stated in its previous order, the undersigned does not discount the possibility of

11 defendant's reinfection from the virus. Erring on the side of caution, the undersigned finds

12 defendant's fear of reinfection, and the potential consequences to him were that to occur, to be

13 potentially well-placed. Nevertheless, the risk of severe illness has now been even further

14 reduced by defendant's recent vaccination against COVID-19. As to defendant's vaccination

15 status, he received his dose of the Johnson & Johnson vaccine on June 10, 2021. (Doc. No. 35 at

16 53—sealed.) Because more than two weeks have passed since receiving that dose, defendant is

17 now fully vaccinated against the virus. *See COVID-19: When You've Been Fully Vaccinated*,

18 Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-

19 ncov/vaccines/fully-vaccinated.html (last updated Jan. 16, 2022). The court recognizes that the

20 CDC also recommends that everyone over the age of 18 who received the Johnson & Johnson

21 vaccine should get a booster dose of either the Pfizer-BioNTech or Moderna vaccine at least 2

22 months after their initial dose.[5] *See id*. Nonetheless, the vaccine that defendant has received no

23 doubt offers at least some protection from severe illness.

24        Furthermore, the medical staff at FCI Mendota appears to be adequately treating

25 defendant for his diabetes and asthma, as reflected in defendant's medical records. (Doc. No. 35

26 at 51—sealed.) Indeed, defendant has made no showing that he is being denied necessary

27

---

28 [5] It is the court's hope that Bureau of Prisons medical staff has or will make a booster dose of either the Pfizer-BioNTech or Moderna vaccine available to defendant.

1   medical treatment or prescriptions or that necessary medical treatment of his diabetes or asthma is

2   being delayed in any way. *See, e.g.*, *United States v. Gorai*, No. 2:18-cr-00220-JCM, 2020 WL

3   1975372, at *3 (D. Nev. Apr. 24, 2020) (finding that defendant "has been unable to self-care in a

4   BOP facility already overburdened by its COVID-19 response" where the defendant could not

5   receive breathing treatments to clear his lungs as required to treat his asthma, despite repeated

6   requests for them); *United States v. Adeyemi*, 470 F. Supp. 3d 489, 516 (E.D. Pa. July 6, 2020)

7   (finding no extraordinary and compelling reason even though a potential lag in medication

8   prescription refills might impact the defendant's ability to self-manage his medical conditions).

9          The court finds that the evidence before it at this time establishes that medical staff at FCI

10  Mendota are able to adequately monitor and care for defendant Zacarias-Mercado. *See United*

11  *States v. McCollough*, No. 15-cr-00336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May

12  29, 2020) ("Since Defendant has contracted COVID-19, the relevant questions concern (1) the

13  course of his illness, (2) the state of his health, (3) his prognosis, and (4) the adequacy of the care

14  and treatment being provided to him in BOP given his pre-existing conditions. . . . There is no

15  evidence that the circumstances surrounding Defendant's health or treatment are extraordinary or

16  compelling."); *see also United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785,

17  at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a

18  sufficient basis for compassionate release.") (internal quotation marks and citation omitted).  The

19  court also concludes that defendant has failed to demonstrate the existence of extraordinary and

20  compelling reasons calling for his compassionate release from confinement in light of the critical

21  fact that he is now vaccinated and in light of the fact that defendant has not shown that FCI

22  Mendota is unable to monitor his medical conditions and provide adequate medical care for him.

23         Accordingly, the court concludes that defendant has not met his burden of demonstrating

24  extraordinary and compelling reasons for this compassionate release under § 3582(c)(1)(A).

25  Therefore, his second motion for compassionate release will also be denied.

26  **C.      Consistency With the § 3553(a) Factors**

27         Finally, even if defendant Zacarias-Mercado's motion were supported by a showing of

28  extraordinary and compelling reasons for his compassionate release, the undersigned is not

10

1    persuaded that the requested reduction in sentence would be consistent with consideration of the

2    sentencing factors set forth at 18 U.S.C. § 3553(a).[6]  *See Parker*, 2020 WL 2572525, at *11.

3           In the pending motion, defendant argues that consideration of the § 3553 factors supports

4    his request for compassionate release because he asserts that he "has rehabilitated himself and

5    learned his lessons, and realized the consequences of his unlawful actions." (Doc. No. 27 at 1.)

6    Defendant further notes that he has been reading religious texts and that he regrets the harm his

7    actions may have caused others.  (*Id.*)  Lastly, defendant lists his plan to work as a fruit-picker or

8    in construction, noting that he would be able to secure such employment easily and that his sister

9    would assist him as well.  (*Id.* at 2.)

10          The government counters that defendant's considerable criminal history and already

11   lenient sentence caution against granting his compassionate release.  (Doc. No. 30 at 6–7.)

12   Specifically, the government points to defendant's convictions in state court in February 2020 for

13   manufacturing a controlled substance, child abuse, and being a felon-in-possession of a firearm.

14   (*Id*. at 2.)  The government also notes that defendant Zacarias–Mercado received only a 46-month

15   sentence of imprisonment in this case, even though the U.S. Probation Office's pre-plea report

16   recommended that a 78-month prison sentence be imposed.  (*Id.*)

17          The court previously rejected defendant's arguments with regard to consideration of these

18   sentencing factors in its order denying plaintiff's first motion for compassionate release.  (Doc.

19   No. 26.)  Because defendant does not raise any new arguments in this regard, the court will not

20   /////

21

---

22   [6] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court
     shall consider:  the nature and circumstances of the offense and the history and characteristics of

23   the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote
     respect for the law, provide just punishment for the offense, afford adequate deterrence, protect

24   the public from further crimes of the defendant and provide the defendant with needed
     educational or vocational training, medical care, or other correctional treatment in the most

25   effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range
     established for the applicable category of offense committed by the applicable category of

26   defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing
     Commission; the need to avoid unwarranted sentence disparities among defendants with similar

27   records who have been found guilty of similar conduct; and the need to provide restitution to any

28   victims of the offense.

11

1    repeat its analysis here and again finds that a reduction of defendant's sentence would not be

2    consistent with consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).

3                                          **CONCLUSION**

4            Because defendant Zacarias-Mercado has failed to demonstrate that "extraordinary and

5    compelling" reasons exist justifying his release under 18 U.S.C. § 3582(c)(1)(A) or that his

6    release from imprisonment at this time would be consistent with consideration of the sentencing

7    factors set forth in 18 U.S.C. § 3553(a), his second motion for compassionate release (Doc. No.

8    27) brought *pro se* on his own behalf is denied.

9    IT IS SO ORDERED.

10       Dated:    **February 6, 2022**

11                                                    UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28